# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

STEVEN TERRANCE LUELLEN, JR.,    )
        )
    Plaintiff,    )     No. 14 C 8148
        )
    v.    )
        )     Judge Edmond E. Chang
MARY DIANE SCHWARTZ, et al.,    )
        )
    Defendants.    )

## MEMORANDUM OPINION AND ORDER

Plaintiff Steven Luellen is an inmate at Dixon Correctional Center. R. 87, Second Am. Compl. ¶ 24.[1] Right before going to prison (he was first imprisoned at Stateville Correctional Center), he suffered a serious injury to both of his ankles. *Id.* Luellen claims that he received inadequate medical treatment from prison medical staff, which—combined with Illinois Department of Corrections (IDOC) officials' disregard for his grievances about the lack of treatment—caused one ankle to heal improperly, limiting his mobility and causing him daily pain. *See id.* Asserting violations of his Eighth and Fourteenth Amendment rights, Luellen filed this suit under 42 U.S.C. § 1983[2] against a number of defendants: eight medical professionals who oversaw his care in prison; four corrections officials at the facilities where Luellen was held (including the wardens of those facilities); the Director and the Chief of Programs at IDOC; the medical records director at one facility; and Wexford Health Sources, Inc., a private-company contractor that

---

[1]Citations to the record are "R." followed by the docket entry and, if applicable, a page or paragraph number.

[2]This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

provides health care to IDOC inmates and employs the medical professionals named in this suit.

The defendants employed by IDOC[3] (the IDOC Defendants) and the defendants employed by Wexford[4] (the Wexford Defendants) filed separate motions to dismiss. *See* R. 69, Wexford Mot. to Dismiss; R. 74, IDOC Mot. to Dismiss. Both the Wexford and IDOC Defendants moved to dismiss Luellen's procedural due process claims (Counts Eleven and Ten), which alleged that the Defendants deprived Luellen of his liberty interest in adequate medical treatment without due process of law in violation of the Fourteenth Amendment. *See* Wexford Mot. to Dismiss; IDOC Mot. to Dismiss. The IDOC Defendants further sought dismissal of Luellen's claims against senior IDOC officials[5] on the grounds that those officials had no personal knowledge of Luellen's situation. IDOC Mot. to Dismiss. For the reasons stated below, the Wexford Defendants' motion is granted and the IDOC Defendants' motion is granted in part and denied in part.

## I. Background

For the purpose of deciding this motion to dismiss, Luellen's factual allegations are accepted as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Luellen

---

[3]These defendants are: Donald Enloe, acting Warden at Dixon; Amy Gomez, counselor and grievance officer at Stateville; Salvador Godinez, Director of IDOC; Jose Hernandez, counselor or grievance officer at Dixon; Shannis Stock-Jones, Chief of Programs and Support Services at IDOC; and Tarry Williams, Warden of Stateville.

[4]These defendants are: Mary Diane Schwartz, P.A.; Saleh Obaisi, M.D.; Susan Tuell, P.A.; Tim Chamberlain, M.D.; Bessie Dominguez, M.D.; and Wexford itself.

[5]Specifically, the IDOC Defendants sought to dismiss Counts One and Five against Williams and Count Nine against Godinez and Stock-Jones. The IDOC Defendants also sought dismissal of Count Seven against Hernandez, and Luellen agreed to that dismissal, R. 91, Pl.'s IDOC Resp. Br. at 1 n.1, so Count Seven against Hernandez is dismissed.

was incarcerated at Stateville Correctional Center in June 2014. Second Am. Compl. ¶ 27. Shortly before his incarceration, Luellen had been in a serious car accident. *Id.* ¶ 24. He fractured both of his ankles in the accident, and underwent surgery to realign them. *Id.* ¶ 25. After the surgery, Luellen's doctors placed his legs in casts and gave him a wheelchair to help him keep weight off of his ankles while they healed. *Id.* ¶ 26.

Luellen was still in a wheelchair when he arrived at Stateville. Second Am. Compl. ¶ 27. But upon his arrival, his wheelchair was taken away by Wexford personnel and replaced by one with a broken wheel that wobbled during use. *Id.* ¶¶ 28-29. Although Luellen notified Wexford medical staff about this problem, no one did anything about it. *Id.* ¶ 29. Over the next five days, the wheelchair's broken wheel jammed or became dislodged three times, each time ejecting Luellen onto the ground and causing pain to his ankles. *Id.* ¶¶ 30-32. Although Luellen filed a number of IDOC grievances, his complaints initially went unanswered and he was forced to remain in the defective wheelchair. *Id.* ¶ 34. After Luellen's third fall, Wexford replaced the defective wheelchair. *Id.*

But the replacement was, if anything, worse. Wexford gave Luellen a reclining chair that lacked the hand-drive wheels normally attached to wheelchairs. Second Am. Compl. ¶ 34. Luellen asked how he was to move about in the reclining chair without hand-drive wheels. *Id.* A Wexford staffer told him to use his feet to push himself forward and back. *Id.* But this required Luellen to put weight on his ankles, which the surgeons who had operated on his ankles had specifically

instructed him not to do. *Id.* ¶¶ 34-35. Luellen's verbal complaints fell on deaf ears. *Id.* ¶ 35.

In June 2014, Luellen went on a medical call to Defendant Schwartz, a physician's assistant employed by Wexford. Second Am. Compl. ¶ 37. Luellen explained that his ankles were causing him extreme pain and asked to see an orthopedic doctor. *Id.* Instead of granting the request, Schwartz allegedly *reduced* the strength of Luellen's pain medication. *Id.* But Luellen continued to complain to Wexford staff and, after two weeks, he received permission to see Dr. Stephen Perns at Midland Orthopedic Associates. *Id.* ¶¶ 38-39. Dr. Perns examined Luellen's ankles and informed him that one of the ankles had not healed properly and would need to be surgically repositioned. *Id.* ¶ 40. Luellen claims that the cause of the failed healing was that neither of the "wheelchairs" that Wexford provided allowed him to consistently keep weight off of his ankles. *Id.* ¶ 91. Dr. Perns instructed Luellen to come back in three weeks to schedule the surgery and discuss its risks, complications, and benefits. *Id.*

But Luellen was not able to return. Although his follow-up appointment was approved by a Wexford practitioner, neither Stateville officials nor Wexford staff ever sent Luellen back to Dr. Perns. Second Am. Compl. ¶ 41.

In August 2014, Luellen was transferred to Kane County Jail. Second Am. Compl. ¶ 42. When he arrived at Kane, Luellen immediately executed a release allowing Kane officials to receive his medical records from Stateville, so he could continue treatment for his ankle and receive the repositioning surgery. *Id.* ¶ 43.

Kane's Medical Administrator confirmed that he had sent Luellen's release form to Stateville; however, Stateville never responded and the records never arrived. *Id.* ¶¶ 44-47. As a result, Luellen still has not received the repositioning surgery and his mis-aligned ankle continues to cause him pain. *Id.* ¶¶ 45, 48.

In an effort to retrieve his medical records, Luellen filed multiple grievances against prison officials at Stateville and Dixon (where he is now incarcerated), as well as an appeal to the IDOC's Administrative Review Board (ARB). Second Am. Compl. ¶¶ 49-63. Although most of his grievances were addressed to Defendant Gomez, a counselor and grievance officer at Stateville, Luellen also wrote a letter to Defendant Williams, the Warden at Stateville, explaining his medical situation, need for corrective surgery, and lack of medical records. *Id.* ¶ 57. In the letter, Luellen implored Williams to release his medical records to Kane. *Id.* Luellen never received a response to this letter or to any other grievances. *Id.* ¶¶ 51-61.

Unable to obtain his medical records from Stateville, and unable to receive the repositioning surgery without those records, Luellen sued the Wexford and IDOC Defendants under 42 U.S.C. § 1983 for injunctive relief and compensatory and punitive damages stemming from the Defendants' alleged deliberate indifference to his serious medical needs.

## II. Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of

what the claim is and the grounds upon which it rests." *Bell Atl. v. Twombly,* 550 U.S. 544, 555 (2007). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir.2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002)).

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal,* 556 U.S. at 679.

### III. Analysis

Despite the large numbers of claims and defendants in this action, the two motions to dismiss before the Court can essentially be reduced to two questions. The first is whether Luellen can assert a procedural due process claim based on the Defendants' failure to implement or follow procedures necessary to (a) ensure the timely transfer of his medical records from Stateville or (b) address his grievances in a timely manner. Luellen claims that the absence of necessary procedures

deprived him of his right to adequate medical treatment. The second is whether Luellen can adequately state claims against senior IDOC officials who were not personally responsible for his medical treatment.

## A. Procedural Due Process Claims

Luellen contends that the absence of proper procedures for the timely transfer of his medical records from Stateville and to effectively address his grievances prevented him from receiving corrective surgery and thus violated his procedural due process rights under the Fourteenth Amendment. Second Am. Compl. ¶¶ 169-180. "The fundamental requirement of [procedural] due process is the opportunity to be heard at a meaningful time and in a meaningful manner" before being deprived of a liberty or property interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citations and quotation marks omitted). Evaluating procedural due process claims entails "a two-step process: [t]he first step requires us to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due." *Sonnleitner v. York*, 304 F.3d 704, 711 (7th Cir. 2002) (citation and quotation marks omitted).

The Seventh Circuit has held that inmates do *not* have a protected interest in a state-created procedure standing by itself. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992). That is, because "process is not an end in itself," an inmate cannot premise a procedural due process claim on the lack of an effective procedure alone. *See id.* at 649 (quoting *Doe by Nelson v. Milwaukee Cnty.*, 903 F.2d 499, 502-03 (7th Cir. 1990)). Instead, there must be some protectable liberty (or life or property) interest that the procedure is designed to protect. *Maust*, 959 F.2d at 649 (quoting

7

*Doe by Nelson*, 903 F.2d at 503). If there is a protectable interest, and if the procedure governing the deprivation of that interest is ineffective or otherwise inadequate, then the plaintiff has a valid procedural due process claim. *See id.*

Luellen argues that he is not claiming an interest just in a procedure by itself. R. 81, Pl.'s Wexford Resp. Br. at 8; R. 91, Pl.'s IDOC Resp. Br. at 11-13. Rather, he claims that he has been deprived of a protectable interest in receiving adequate medical treatment—a well-accepted liberty interest, *see, e.g., Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013)—and that the absence of procedures ensuring the transfer of medical records or that grievances would be heard meant that there was no process protecting Luellen from that deprivation, *see* Pl.'s Wexford Resp. Br. at 8; Pl.'s IDOC Resp. Br. at 11-13.

But that way of characterizing the claim incorrectly mixes up *procedural* due process claims with *substantive*-rights claims. Really what Luellen is claiming is the right to be free from deliberate indifference to serious medical needs, which is a *substantive* right guaranteed by the Eighth Amendment (as applicable to state prisons via incorporation through the Fourteenth Amendment). No amount of *process* can affect that right one way or the other. To understand this point, consider that procedural due process claims—real procedural due process claims— assert that the defendant must allow the plaintiff to be "heard at a meaningful time and in a meaningful manner," *Mathews*, 424 U.S. at 333—before being deprived of the underlying protectable life, liberty, or property interest. But here, Luellen's

right to adequate medical treatment is the substantive right guaranteed by the Eighth Amendment's prohibition of cruel and unusual punishment. *McGee*, 721 F.3d at 480. The Eighth Amendment provides for this right substantively—it does not provide for a scenario in which an inmate can be cruelly and unusually punished *after* receiving process and a fair hearing. Because that type of punishment is never permitted, there is no purpose in contemplating what sort of pre-punishment hearing or procedure would be considered "fair." *See Clentscale v. Beard*, 2008 WL 3539664, at *5 (W.D. Pa. Aug. 13, 2008) ("If the Defendants are absolutely barred from inflicting cruel and unusual punishments, and they are, then a hearing would serve no purpose. The law does not require a useless act of providing a hearing where the outcome cannot be other than one outcome, i.e., the deprivation of adequate medical care is absolutely barred."). Because Luellen's substantive interest in adequate medical treatment cannot be taken away at all, he cannot complain that it was taken away without procedural protections. Of course, Luellen can argue (and based on the allegations in the Second Amended Complaint, it appears that he is arguing) that the failure to take certain steps or follow certain procedures is *evidence* of deliberate indifference to his serious medical needs, but that argument is subsumed in his Eighth Amendment claims—there is no separate procedural due process claim. So Luellen's procedural due process claims fail.

## B. Claims Against Senior IDOC Officials

The second issue presented in the Defendants' motions to dismiss is whether Luellen can pursue deliberate indifference claims against various IDOC officials who were not personally responsible for Luellen's care. These include Defendants

Williams, the then-Warden at Stateville; Godinez, the then-Director of IDOC; and Stock-Jones, the then-Chief of Programs and Support Services for IDOC.

As discussed earlier, the Eighth Amendment prohibits prison officials from displaying "deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (quoting *Estelle*, 429 U.S. at 104). To succeed on his deliberate-indifference claim, Luellen must show (a) that he had a medical condition that was "objectively, sufficiently serious"; and (b) that the prison officials against whom he brought his claims "acted with a sufficiently culpable state of mind." *Greeno*, 414 F.3d at 653 (citations and internal quotation marks omitted). The state-of-mind element requires that the officials "know of and disregarded an excessive risk to inmate health; indeed they must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and must also draw that inference." *Id.* (citation and internal quotation marks omitted).

Because there is no *respondeat superior* liability under Section 1983, a plaintiff must demonstrate that each defendant was personally responsible for the alleged constitutional violation. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). But a supervisor may be liable for the violations of his or her subordinates if the supervisor approved of, or knew of but turned a blind eye to, the subordinates' misconduct. *Id.* That type of failure to intervene is a form of personal misconduct. Here, the IDOC Defendants argue that Luellen failed to allege facts showing that

10

Williams, Godinez, or Stock-Jones had any knowledge of his need for surgery, much less that they ignored that need. *See* IDOC Mot. to Dismiss.

But that is not entirely correct, at least as to Williams. In fact, Luellen alleged that he informed Williams of his medical condition in a letter dated September 1, 2014. Second Am. Compl. ¶ 57. The letter explained that Luellen's ankle failed to heal properly because he was forced to use defective wheelchairs while at Stateville, and asked Williams to transfer Luellen's medical records to Kane so that Luellen could receive corrective surgery. *Id.* The Seventh Circuit has recognized that writing a letter to supervisory prison officials can, in some circumstances, be enough to state a valid deliberate indifference claim. *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996); *see also Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) (holding that plaintiff's assertion that he sent the warden a "resident request" asking for assistance with a grievance allowed his claims against the warden to survive dismissal). Although some Seventh Circuit decisions have required that the plaintiff show that the letter recipient actually saw or read the correspondence, those decisions have come at the summary judgment stage, after the plaintiff has had the benefit of discovery. *See, e.g., Vance*, 97 F.3d at 993-94. In evaluating a dismissal motion, the Court must take Luellen's factual allegations as true, and grant him reasonable inferences arising from the allegations. *See Twombly*, 550 U.S. at 556. Luellen's assertion that he sent Williams correspondence detailing his medical condition adequately alleges that Williams was aware of the condition and its attendant risks.

Moreover, Luellen's assertion that Williams never responded to his letter, Second Am. Compl. ¶ 57, is a sufficient allegation that Williams disregarded Luellen's medical risks. Although "[d]oing nothing *could* be simple negligence," "it does not stretch the imagination to see that it might also amount to deliberate indifference." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Ignoring a prisoner's complaints and failing to initiate any type of investigation into those complaints can constitute deliberate indifference. *Cf. Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008) (holding that non-medical prison officials were not deliberately indifferent because they "responded readily and promptly to each of [the plaintiff's] letters and grievances," investigated the prisoner's complaints and did not completely ignore them). As far as Luellen alleges, Williams took no action to address Luellen's plea for medical care or for the transfer of his medical records. Therefore, Luellen's deliberate indifference claims against Williams may stand.

Unlike the claims against Williams, the deliberate-indifference counts against Godinez and Stock-Jones contain no allegations that Luellen reached out to them personally or that they were otherwise aware of Luellen's medical needs. Although senior officials can be made to answer to complaints of systemic constitutional violations, *Antonelli v. Sheahan*, 81 F.3d 1422, 1429 (7th Cir. 1996)—even if they were not personally aware of a particular plaintiff's complaints—there is no suggestion that happened here. Luellen stresses that Godinez and Stock-Jones were high-ranking IDOC officials and, from that, infers that they were in a position to institute policies and procedures for the transfer of inmate medical records. Pl.'s

IDOC Resp. Br. at 10-11. But that merely alleges that Godinez and Stock-Jones had the *power* to implement certain policies and practices that could perhaps better protect against constitutional violations, not that the existing policies and practices led to widespread constitutional violations. Nor does Luellen allege other, specific instances in which Godinez or Stock-Jones have failed to transfer medical records, or were otherwise deliberately indifferent to inmates' medical needs. *Cf. Truidalle v. Taylor*, 2011 WL 6780690, at *6 (N.D. Ill. Dec. 23 2011) (inferring the personal involvement of a prison warden and the director of IDOC where plaintiff's claim of contaminated water involved "potentially systemic" rather than "clearly localized" constitutional violations). Because Luellen has not adequately alleged that Godinez or Stock-Jones were aware of his medical needs or that the failure to transfer inmate medical records was a systemic problem, his claims against Godinez and Stock-Jones must be dismissed.

## IV. Conclusion

For the reasons discussed in this Opinion, the Wexford Defendants' motion to dismiss Count Eleven is granted; the IDOC Defendants' motion to dismiss Count Seven against Hernandez and to dismiss Counts Nine and Ten is granted; and the IDOC Defendants' motion to dismiss Counts One and Five against Williams is denied.

ENTERED:

　　　　s/Edmond E. Chang　　　　
Honorable Edmond E. Chang
United States District Judge

DATE: November 1, 2016